# BAKER & BAKER
A PROFESSIONAL CORPORATION

WILLIAM E. BAKER, JR.
PAIGE MERRILL BAKER
BRETT M. STERNAD
SENI B. BAEZA

1970 OLD TUSTIN AVENUE
SECOND FLOOR
SANTA ANA, CALIFORNIA 92705-7812
TELEPHONE (714) 558-4832
FACSIMILE (714) 558-7547

August 5, 2021

**VIA ECF and EMAIL**:
Hon. Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:   District Attorney of New York v. The Republic of the Philippines, et al.
      Case No. 14-CV-00890 (KPF) (JCF)

Dear Judge Failla:

This Firm represents the Estate of Roger Roxas and the Golden Budha Corporation ("Estate/GBC") and writes in response to the Letter of July 22, 2021, previously sent to you by Cesar de Castro, concerning the final distributions to his clients (the "Sisters"), and Vilma Bautista who is represented by Roberto Cardenas, and to our clients.[1]

## This Court Should Apply New York's Default Statutory Rate of 9% to the Sisters' Loan

As set forth more fully below, there is only one real issue of import raised in Mr. de Castro's letter and that is the issue of the percentage of interest to be charged and accrued. He questions the term "legal interest" as used in the signed Order. That term was discussed when the Order was being drafted. In particular, on or about October 9, 2018, the specific interest rate authorized in the State of New York (9%) was discussed by me with Roberto Cardenas and also with Daniel Brown.

On October 8, 2018, in an email with Mr. Brown, I requested that the Sisters be charged the "interest" on the money they used to pay-off the Hummingbird Road loan. This request was conveyed by email to Messrs. de Castro and Cardenas. (**Ex. 3**). California, where my practice is

---

[1] Attached is a filed copy of the Stipulation and Order dated January 17, 2019 (ECF No. 488) (the "Order"), text only, no exhibits or attachments (**Ex. 1**) in which the distributions were defined and calculated. Mr. de Castro is close in his calculations of the ultimate distributions, with some exceptions noted herein. The more accurate and more correct calculations are attached as **Exhibit 2**.

August 5, 2021
Page 2

located, the legal interest is 10% per annum, whereas in New York, it is 9% per annum as acknowledged by Mr. Cardenas (*see* N.Y.C.P.L.R sec 5004). Mr. Cardenas recently recalled our discussions concerning the different interest rates.

Importantly, all subsequent drafts of the Order included the language "legal interest." On November 28, 2018, another draft Order was sent containing the words "legal interest." (**Ex. 4**). On December 6, 2018, Mr. Brown sent another draft of the Order, which once again included the words "legal interest" to Messrs. Cardenas and de Castro (**Ex. 5**).

On December 18, 2018, I emailed the Estate/GBC's acceptance of the revisions Messrs. de Castro and Cardenas made to an earlier draft. (**Ex. 6**). Once again, this revision retained the requirement of "legal interest." Neither Mr. de Castro nor Mr. Cardenas ever objected to the use of the term "legal interest" in any later draft or in the final Order. I believed from my discussions with Roberto Cardenas that the words "legal interest" were understood by all to be the statutory rate of 9%. Neither Mr. de Castro or Mr. Cardenas ever asked for an explanation confirming my belief that they also understood the meaning of "legal interest." Between that date, and the date the Order was signed by all parties, the provision for "legal interest" was included in every iteration of every draft of the document, and the final signed Order.

Recently, Mr. de Castro questioned the specific interest rate to be charged on the Sisters' paid-off $637,000.00 loan.[2] I reminded him of the words in the signed Order, requiring "legal interest" to be calculated. Additionally, on July 13, 2021, I sent him Black's Law Dictionary definition of "legal interest," as well as New York's Civil Practice and Rules' ("CPLR") default provisions for interest on established obligations (N.Y.C.P.L.R. 5001) and the reference to N.Y.C.P.L.R sec 5004, requiring 9% interest on obligations. (**Ex. 7**). Notably, a court may use a dictionary to determine the "ordinary, common-sense meaning of the words." *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016) (internal citations omitted). Here, Black's Law Dictionary definition clearly supports the Estate/GBC's position that New York's default statutory interest rate of 9% applies. (**Ex. 7**).

On July 14, 2021, I wrote to all Counsel providing a copy of the Order provisions concerning the sale of the Condominium, the power you reserved in the Order for enforcement, the lack of an attorney's fee provision and the application of New York law in interpretation. (**Ex. 8**)

---

[2] During settlement discussions in 2018, Mr. de Castro previously represented that the amount of the paid-off loan was $637,000.00. He said he would provide proof. I never received proof before the Order was signed. He asserted that the documents confirming the amount were seized by the New York County District Attorney. He recently provided the actual documents confirming the loan amount of $650,000.00. (**Ex's. 9-10**).

When the Condominium recently sold, I requested an accounting of funds and assets received by the Sisters in order to calculate a final distribution. This is when I heard for the first time that Mr. de Castro claimed that he did not understand that "legal interest" was calculated at 9%. Instead, he claimed that Federal Law applied. I reminded him of paragraph 25 of the Order which required application of New York State Law. (**Ex. 1**).

Tellingly, Mr. de Castro's letter fails to cite a single authority to support his proposed hybrid interest rate and/or why this Court should apply a "legal interest" rate other than New York's default rate of 9%. Indeed, New York law is clear that the default statutory rate should apply where, as here, the parties failed to include a specific interest rate. *See, e.g., NML Cap. v. Republic of Argentina*, 17 N.Y.3d 250, 258 (N.Y. 2011) ("if the parties failed to include a provision in the contract addressing the interest rate that governs after principal is due or in the event of a breach, New York's statutory rate will be applied as the default rate."); *Bryan L. Salamone, P.C. v. Cohen*, 40 Misc. 3d 338, 343 (N.Y. Sup. Ct. 2013) ("Absent a contractual provision which fixes the rate of interest upon an obligation (and subject to various other statutory provisions), the legal rate of interest in New York is 9% per annum, as set forth in CPLR § 5004. This is the rate that . . . Courts will award absent any enforceable agreement to the contrary.") Here, Mr. de Castro fails to offer any support for an interest rate other than New York's default rate.

My calculations in **Exhibit 2** start when the Hummingbird Road loan was paid off on October 26, 2010 (Ex. 10) and continue to July 19, 2021, when the Escrow was scheduled to close consisting of 3,920 days. On the amount of $637,000.00, the total accrued legal interest to July 19, 2021 is $615,714.40. For each day after July 19, 2021, additional interest of $157.07 per day is added. On the amount of $650,000.00, the amount of accrued legal interest for the same period is $628,258.40 with per diem interest of $160.27. Whichever amount the Court determines is the appropriate amount will reduce the cash to the Sisters and increase the cash to the Estate and GBC.

I tried to calculate distributions using the Order as my guide on what it said the Sisters were to receive as Mr. de Castro never responded to my requests that he confirm what they had actually received to date. My calculations were not accurate or complete as I had no information on what the Sisters actually received. I later received the needed information from Mr. de Castro and was then able to prepare **Exhibit 2** showing the distributions based on the actual amounts received and the two different amounts of the paid-off Hummingbird Road loan. Page 1 of **Exhibit 2** shows the total amount available for distribution from the Condominium proceeds and the Trust account. Page 2 shows the calculations for a $637,000.00 loan pay-off while page 3 shows the calculations based on a $650,000.00 loan pay-off.

In an attempt to muddy the waters, Mr. de Castro accuses me of making "threats." This is completely false. During our recent July 14, 2021 call, Mr. de Castro argued with me about the definition of "legal interest." Specifically, he claimed that the term was ambiguous

and that he would argue for different interest rates. Additionally, he stated that he would seek legal fees from the Estate/GBC unless I acquiesced to his proposed negotiated interest rate. In a conference call between Mr. de Castro, Mr. Cardenas and I, Mr. de Castro continued his arguments that the interest rate was ambiguous and uncertain. I reminded him of his legal duties set forth in the New York Rules of Professional Conduct, specifically Rule 1.15 concerning the trust fund accounting I had previously requested but was never provided; Rule 3.1 concerning frivolous claims, and Rule 4.1 concerning his obligations to make truthful statements. My letter of July 16, 20201, confirms my position. (**Exhibit 11**). On July 19, 2021, I again wrote to Mr. de Castro, (**Exhibit 12**), again confirming the definition of legal interest and his obligation to comply with the New York Rules of Professional Conduct. To be clear, at no time did I ever threaten to report him to this Court or the New York Disciplinary Committee.

### $13,548.53 of "Closing Costs" Should Be Made Available for Distribution

In addition to the interest rate, the Estate/GBC also disputes some of the purported closing costs from the sale of the Condominium. On July 21, 2021, pursuant to my request, I received the documents showing the closing costs of the sale and the accounting of the money Mr. de Castro held in trust. (**Ex. 12**). Several items shown as "closing costs" or "expenses of sale" are, in fact, the obligations of the Sisters to pay from their proceeds – not "off the top" as shown. To that end, paragraph 5 of the Order states:

> "To avoid any confusion, the Sisters will be responsible for maintenance, insurance and all costs related and concerning the Condominium pending liquidation. The Escrow Holder shall prepare an accounting of all deposits and disbursements for the Account which shall be submitted to the Court and the Parties.

The contested costs which should be paid by the Sisters are:

FROM MR. DE CASTRO'S ACCOUNTING:

| Date | Item | Amount |
|---|---|---|
| 7/13/2019 | Cleaning | $326.63 |
| 7/21/2021 | Freezer repair | $2,014.00 |
| 7/21/2021 | Legal fee to Mr. de Castro | $5,000.00 |

TOTAL to add to the Accounting: $7,340.82

August 5, 2021
Page 5

FROM THE CLOSING STATEMENT:

| 7/21/2021 | Move out fee | $750.00 |
|---|---|---|
| 7/21/2021 | Power of Attorney | $77.00 |
| 7/21/2021 | Electricity | $200.71 |
| 7/21/2021 | Legal fee to Mr. de Castro (Mr. de Castro has already agree to reimburse the common fund with the second $5,000 he paid his firm for the same services to close escrow). | $5,000.00 |

TOTAL to add to the Closing Statement: $6,027.71

Total of both to add to the cash available for distribution: **$13,548.53**

To be sure, there is no provision in the Order authorizing Mr. de Castro to charge the Estate or GBC with his legal fees to handle the sale of his clients' property. To the contrary, paragraph 5 of the Order clearly provides that the Sisters were to remain responsible for all costs associated with the Condominium until it was sold. Thereafter, Mr. de Castro was to distribute the proceeds pursuant to the Order. (**Ex. 1**)

In sum, there is no good faith or true dispute over what "legal interest" means as defined by New York law. There is no ambiguity in the words used in the Order. The use of "legal interest" was in all drafts of the Order from October 2018 until the final Order was signed and filed on January 17, 2019. The proposed distribution attached as Exhibit 2 shows the correct allocations per the Order.

Based on the foregoing, we respectfully request that the Court assist us in determining the correct amount of the paid-off Hummingbird Road loan based on the recorded documents provided by Mr. de Castro, a determination that "legal interest" using New York law is 9%, and to determine the correct distribution to each party of the remaining funds.

August 5, 2021
Page 6

We look forward to discussing this matter at the Court's convenience.

        Respectfully submitted,

        William E. Baker, Jr.
        BAKER & BAKER,
        A Professional Corporation

        Daniel Brown
        BROWN LAW GROUP, PLLC

Enclosures